UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CTI CONTRACTOR SERVICES, LLC, *et al.*,

       Plaintiffs,

                                  Case No. 25-10785

v.

                                  Hon. F. Kay Behm

MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

       Defendants.

_____/

## <u>OPINION AND ORDER ON MOTION TO DISMISS (ECF No. 13)</u>

### I.    PROCEDURAL HISTORY

Plaintiffs (CTI Contracting Services LLC and Edward Wenz) filed this action against the Michigan Department of Health and Human Services ("MDHHS" or the "Department") along with several of its employees on March 20, 2025.  (ECF No. 1).  Plaintiffs assert federal and state law constitutional claims arising from their administrative appeal of certain citations on lead remediation work they performed.  On June 18, 2025, Plaintiffs filed an Amended Complaint.  (ECF No. 12).  Defendants filed their motion to dismiss the Amended Complaint on July 3, 2025.  (ECF No. 13).  This matter is fully briefed.  (ECF Nos 16, 17).  The court held a hearing on this matter on January

28, 2026.  (ECF No. 18).  Pursuant to the court's request, the parties submitted post-hearing supplemental briefs.  (ECF Nos. 20, 21).

For the reasons set for below, the Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] … [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as

2

"when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678.  However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.  Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the

3

complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings").  Nonetheless, it is well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary

judgment under Rule 56.  Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted).

## II.    FACTUAL BACKGROUND

This case arises from a lead-abatement project on a two-unit residential building located on Indiana Street in Detroit, Michigan (the "Subject Property").  (ECF No. 12, ¶ 37).  In the Fall of 2019, the Department commissioned lead inspectors to prepare a Lead Inspection Risk Assessment ("LIRA") report for the Subject Property.  *Id*. at ¶ 38.  Defendant Williams was assigned by the Department to handle the project.  *Id*. at ¶ 41.  After receiving the LIRA reports for the upper and lower units at the Subject Property (which were signed and certified as being 100% accurate), Williams prepared the

specifications and bid form for the Subject Property.  *Id*. at ¶ 42.  The MDHHS

bid form prepared by Williams contained the job specifications; as it

pertained to the basement windows, the specifications called for replacing

the steel-framed glass hopper-type basement windows with glass block

windows.  *Id*. at ¶ 44.  Williams prepared the bid documents and sent out the

bid form on March 6, 2019.  *Id*. at ¶ 47.  Plaintiff Wenz completed and

submitted the bid form on behalf of CTI.  *Id*. at ¶ 48.  According to the

Amended Complaint, the Subject Property did not incorporate an addendum.

*Id*. at ¶ 49.

Plaintiffs received a copy of the LIRA reports for the Subject Property on

March 25, 2019.  (ECF No. 12, ¶ 51).  The LIRA reports contained XRF (X-ray

fluorescence readings) results regarding the lead hazards at the Subject

Property, which did not include the basement or the basement windows.  *Id*.

at ¶¶ 52-55.  Plaintiffs contend that at no point were they advised that the

windows in the basement were lead hazards.  *Id*. at ¶ 57.  On March 12, 2019,

interested contractors participated in a walk-through of the Subject Property.

(ECF No. 13, Ex. A, p. 6, ¶ 3).  According to the testimony at the administrative

hearing on the citations issued to Plaintiffs, an individual attended on behalf

of Plaintiff CTI and was informed that the basement windows needed to be

replaced due to the presence of lead.  *Id.*   Plaintiffs performed all work required by the MDHHS specifications, including all lead and non-lead work. (ECF No. 12, ¶ 58).  Plaintiffs' work underwent a final oversight inspection by the Department on May 21 and May 22, 2019.  *Id*. at ¶ 59.  The final clearance and oversight inspection report showed that Plaintiffs' work on the Subject Property passed every line-item on the activity compliance checklist and noted "No" as to any illegal practices regarding lead remediation.  *Id*. at ¶ 60. The Department's May 2019 oversight inspection report gave Plaintiffs an "Excellent" overall rating for the work performed.  *Id*. at 61.

In a letter dated May 28, 2019 signed by Defendant Shutts, Plaintiffs were advised that MDHHS staff conducted a compliance investigation on May 15, 2019 and concluding that the conditions at the Subject Property violated Michigan's lead hazard regulations.  (ECF No. 12, ¶ 62).  The citation was for three violations of Michigan's lead hazard regulations, specifically: (1) Plaintiffs failed to use adequate ground cover when replacing the basement windows; (2) Plaintiffs failed to adequately protect occupant belongings from lead dust and debris; and (3) Plaintiffs failed to adequately seal off HVAC registers in the work area.  (ECF No. 12, ¶¶ 62-63; Citation of Violation and Enforcement Action, ECF No. 13, Ex. C).  The letter further advised Plaintiffs

7

that three citations were issued for the alleged violations with administrative fines totaling $4,500.00.  (ECF No. 12, ¶ 63).  Shutts admitted in an email that the LIRA reports showed no lead-positive shots in the basement.  *Id*. at 64.  Plaintiffs denied responsibility and requested an informal compliance conference.  *Id*. at ¶ 65.

The Department held an informal conference on July 9, 2019.  (ECF No. 12, ¶ 66).  Wenz explained that the windows were tested by the Department and were negative for lead, but Shutts claimed there was an "addendum" to the LIRAs prepared by the staff.  *Id*. at ¶¶ 67-68.  Shutts left the conference to locate the addendum, which consisted of one page which Wenz was not allowed to inspect.  *Id*. at ¶¶ 68-70.  The addendum provided that the basement windows were lead-positive and in a deteriorated condition.  *Id*. at ¶ 71.  The Department staff, including Shutts left the room to consider the evidence and then returned to advised Wenz of their determination that all violations were valid and would be enforced.  *Id*. at ¶ 72.  The addendum provides that Williams inspected the Subject Property on February 13, 2019 and prepared and submitted the report on February 25, 2019, which was later discovered to be false.  *Id*. at ¶ 75.  The report purports to indicate that

additional testing was conducted after the LIRA reports were prepared and that there were positive lead-paint results not originally identified.  *Id*. at ¶ 76.

Plaintiffs appealed the Department's decision and appeared for an evidentiary hearing before an administrative law judge.  (ECF No. 12, ¶ 77).  According to the Amended Complaint, Defendant Williams falsely testified under oath that he emailed the addendum to MDHHS Staff (Christina Henry and Sonya Frick) on February 25, 2019 when he never sent the addendum to anyone in the Department at any time during the pendency of the project.  *Id*. at ¶ 81.  Defendant Shutts testified and according to the Amended Complaint, she falsely implied that she believed the addendum had been timely shared when in fact she knew that the first time the addendum had been shared was on the day of the informal conference.  *Id*. at ¶ 84.  At the three-day hearing, Plaintiffs disputed having knowledge that the windows in the basement of the Subject Property contained lead-based paint.  The Administrative Law Judge (ALJ) rejected this.  (ECF No. 13, Ex. A, pp. 10-11 (Plaintiffs' argument "must fail in light of the overwhelming evidence that indicates Petitioner [Plaintiffs] was aware that the basement windows contained lead hazards.")).  After hearing testimony and reviewing the evidence, the ALJ issued a decision

9

affirming all three citations against Plaintiffs.  (ECF No. 12, ¶ 85; ECF No. 13, Ex. A).

On August 16, 2022, the Department placed CTI on probation by prohibiting it from being awarded any additional projects until all projects that were awarded to CTI at the time were successfully completed and imposed an additional restriction on CTI by limiting the number of projects it could be awarded to two projects at a time for a minimum of 12 additional projects. The Department threatened CTI that it would be removed from the Approved Vendor List if any of the projects it was awarded were assessed as unsatisfactory.  And as a further sanction to Plaintiffs, CTI now has a negative record with the Department as having a history of lead-safety violations.  (ECF No. 12, ¶ 86).

Plaintiffs appealed that decision to the Oakland County Circuit Court. (ECF No. 12, ¶ 87).  The court specifically rejected Plaintiffs' arguments "that the Department wrongly issued and the ALJ erroneously upheld the three Citations against it on the basis that it should have known that that the basement's metal windows were lead-based hazards even though the contract documents did not show that they were lead-based hazards." (Circuit Court Opinion and Order, ECF No. 13, Ex. D, p. 7).  The court found

that the record demonstrated that (1) Plaintiffs received documentation that reflected that the basement windows were lead hazards; (2) Plaintiffs advised that they planned to "implement work practices to minimize contamination in the residence"; (3) Plaintiffs were required to always use "lead-safe work practices"; and (4) replacement of the windows would only be funded by Medicaid if they were lead hazards.  Id. at 7-8.

The court found that it "is simply not the case" that the "Addendum Report was the only document that would have apprised them [Plaintiffs] that the basement windows were lead-based hazards." *Id*. at 8.  The court agreed that Plaintiffs had notice that the windows were lead-based hazards because their representative attended a walkthrough of the Subject Property; they received the plans, specifications, and bids; the windows were specifically discussed with interested contractors because they tested positive for lead and were deteriorated; contractors always have to use "lead-safe work practices" when performing window replacement; the specifications received by CTI specifically noted the windows; and this was a known Medicaid-funded project, and Medicaid would only fund this if the windows were a lead hazard. *Id*.  There was also evidence that Plaintiffs signed an "Occupant Protection Plan" prior to beginning the project that indicated the necessary steps would

11

be taken. *Id*. at 9.  The Administrative Decision and Order was affirmed.  (ECF No. 12, ¶ 87; ECF No. 13, Ex. D, pp 9-10.)

The Amended Complaint alleges that Defendants Speidel and Frick conspired to continue imposing restrictions on CTI's ability to submit bids to the Department.  (ECF No. 12, ¶ 88).  Frick's husband is a lead-abatement contractor who benefitted from the restrictions imposed on CTI.  *Id*. at ¶ 89.  Despite satisfying the probation period, Speidel and Frick continued to restrict Plaintiffs from submitting bids until March 11, 2024.  *Id*. at 90.

After several FOIA requests, the Department claimed it was unable to locate the original version of the addendum in Word format and thus, could not produce the metadata for the document.  (ECF No. 12, ¶¶ 91-92).  After Frick left the Department in March 2024, the Department located the original Word version of the addendum.  *Id*. at ¶¶ 93-94.  Contrary to Williams and Shutts' statements under oath, the metadata showed that Williams did not work on the addendum on February 19, 2019.  *Id*. at ¶ 97.  The metadata showed that the document was edited though March 27, 2019 by Williams. *Id*. at ¶¶ 98-99.  The documents produced by the Department in response to the FOIA requests show that Williams never emailed the addendum to anyone in the Department.  *Id*. at ¶ 100.  The Department admitted that the "final

version" of the addendum was created on the day of the informal compliance conference.  *Id.* at ¶ 105.  Because of the Department's conduct, Plaintiffs say it was impossible for CTI to have introduced exculpatory evidence before the administrative law judge and impossible to have fully cross-examined the Department's witnesses regarding their false and misleading testimony.  *Id*. at ¶ 106.  Plaintiffs bring a claim under the Fourteenth Amendment Due Process Clause pursuant to 42 U.S.C. § 1983 (Count I), and for civil conspiracy under 42 U.S.C. § 1985 (Count II), along with claims under the Michigan Constitution for a violation of due process (Count III), for unfair and unjust treatment (Count IV) and finally, for fraud on the tribunal (Count V)

## III.   ANALYSIS

### A.    Sovereign Immunity

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984);  *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Section 1983 provides a civil enforcement mechanism and remedy for constitutional injuries caused by

defendants who act under color of state law. *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008). Though 42 U.S.C. § 1983 was adopted pursuant to § 5 of the Fourteenth Amendment, Congress did not indicate its intent to abrogate state sovereign immunity and therefore, Eleventh Amendment immunity is preserved. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). "It is well established that § 1983 does not abrogate the Eleventh Amendment and that Michigan has not consented to the filing of civil rights suits against it in federal court." *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997). Accordingly, Plaintiffs' claims for money damages under the Fourteenth Amendment against the MDHHS and the individual defendants in their official capacity, which can be enforced only through § 1983, are barred by sovereign immunity.

Plaintiffs contend however, that they seek prospective injunctive relief, which is not barred by sovereign immunity. More specifically, Plaintiffs seek to enjoin Defendants from enforcing any restriction, citation, or adverse action against Plaintiffs arising from enforcement of the informal compliance conference held on July 9, 2019 and the ALJ's Decision and Order dated August 2, 2022. (ECF No. 12, PagedID.176). Plaintiffs also seek to enjoin Defendants from retaliating or discriminating against Plaintiffs in any future

14

bidding, contracting, or enforcement decisions. *Id.* The Eleventh Amendment does not bar official-capacity civil rights suits "when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)); *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908). If the complaint fails to "make clear what those ongoing violations are," the exception does not apply. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Nor does the exception exist for injunctive relief "based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to" the plaintiff. *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003). Here, the alleged violation occurred in the past and Plaintiffs do not allege any ongoing violation of federal law. That is, there is no ongoing conduct by Defendants that the court could order be stopped. Instead, Plaintiffs seek to enjoin Defendants from enforcing any restriction, citation, or adverse action against Plaintiffs arising from enforcement of the informal compliance conference held on July 9, 2019 and the ALJ's Decision and Order dated August 2, 2022. (ECF No. 12, PagedID.176). However, the court understands that Plaintiffs have completed their probationary period and are no longer under any restriction

15

from the order.  Plaintiffs also seek to enjoin Defendants from retaliating or discrimination against Plaintiffs in any future bidding, contracting, or enforcement decisions.  *Id*.  Again, the Amended Complaint does not point to any currently ongoing violation of their federal constitutional rights such that injunctive relief is appropriate under *Ex Parte Young*.

B.   Conspiracy

In Count II, Plaintiffs bring a civil conspiracy claim under 42 U.S.C. § 1985.  As explained in *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ*., 926 F.2d 505, 509–10 (6th Cir. 1991), the Sixth Circuit court has adopted the general rule in civil conspiracy cases under § 1985 that a corporation cannot conspire with its own agents or employees.  *Id*. (citing *Doherty v. American Motors Corp*., 728 F.2d 334, 339 (6th Cir. 1984)).  Although the doctrine was first developed in the context of antitrust litigation, the *Doherty* court stated, "[T]he same rule has been consistently applied in allegations of conspiracy under the Civil Rights Act."  *Id*. (quoting *Doherty*, 728 F.2d at 339).  The Sixth Circuit in *Doherty* agreed with a second circuit decision, *Herrmann v. Moore*, 576 F.2d 453 (2nd Cir.1978), which applied the "intra-corporate conspiracy" doctrine to bar the plaintiff's § 1985(2) claim.  In the present case, Plaintiffs are alleging a conspiracy under § 1985 among

16

employees of MDHHS, all of whom are employees of the Department.  Since

all of the defendants are members of the same collective entity, there are not

two separate "people" to form a conspiracy.  *See Hull*, 926 F.2d at 510.  Thus,

Count II of the Amended Complaint is **DISMISSED**.

    C.    <u>Fraud on the Tribunal</u>

Plaintiffs allege that Defendants submitted false testimony and

fabricated documents to materially influence the administrative and state

court proceedings.  (ECF No. 12, ¶ 159).  This, according to Plaintiffs,

constitutes fraud on the tribunal.  *Id*. at ¶ 161.  However, as explained in

*EQMD, Inc. v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 19-13698, 2021 WL

843145, at *9 (E.D. Mich. Mar. 5, 2021) such relief is limited to the court that

was allegedly defrauded.  Indeed, "[f]ederal courts have expressed hostility to

the proposition that a mere allegation that a previous judgment was obtained

by 'fraud on the court' defeats the defense of res judicata."  *Id*. (citing *LaMie v.*

*Wright*, 2014 WL 1686145, at *14 (W.D. Mich. Apr. 29, 2014) (citing *Plotner v.*

*AT & T Corp*., 224 F.3d 1161, 1170 (10th Cir. 2000)).  "This has been the rule in

the Sixth Circuit for over 100 years."  *LaMie*, at *14 (citing *Kansas City F.T.S. &*

*M.R. Co. v. Morgan*, 76 F. 429, 435 (6th Cir. 1896) (finding it impermissible for

a party to attack a judgment in a collateral proceeding on account of fraud)).

"If a party believes that a previous judgment was procured by fraud on the court, the proper course of action is for that party to bring a post-judgment motion or an independent action in equity to vacate that judgment in the original court—here, Michigan state court."  *EQMD*, at \*9 (citing *LaMie*, at \*14 (collecting cases); *see also* 11 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2868, Westlaw (3d ed. updated Oct. 2020) ("The normal procedure to attack a judgment should be by motion in the court that rendered the judgment."); *Lamie v. Hoopes*, 2023 WL 7114836, at \*2 (W.D. Mich. Oct. 27, 2023) ("even if Plaintiff is correct that a fraud on the court occurred in the state court lawsuit, that fact does not provide a cause of action here; the fraud that occurred in the state lawsuit cannot provide a basis for awarding damages in this federal lawsuit.") (citing *Stooksbury v. Ross*, 2017 WL 11674584, at \*10 (E.D. Tenn. Jan. 5, 2017)).

Notably, Plaintiffs did not respond to this argument in their response to the motion to dismiss and thus, have abandoned this claim.  *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (stating that the district court "correctly noted ... that [plaintiff] abandoned [certain] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775,

785 (E.D. Mich. 2015) ("A plaintiff abandons undefended claims."); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim"). Accordingly, Count V of the Amended Complaint is **DISMISSED** with prejudice to the extent it raises a fraud on the court claim under federal law and without prejudice to the extent it raises a state law fraud on the court claim.

    D.    <u>Michigan State Constitutional Claim – Fair and Just Treatment</u>

Plaintiffs brings an additional Michigan state law claim: an unfair and unjust treatment claim under the Michigan Constitution (Count IV).  Courts may decline to exercise supplemental jurisdiction over a state law claim if the claim raises a novel or complex issue of State law.  28 U.S.C. § 1367(c)(1). The Sixth Circuit recently examined whether a district court had discretion to exercise supplemental jurisdiction over a claim under the Fair and Just Treatment clause of the Michigan Constitution.  *Williams v. Addison Cmty. Schs.*, 168 F.4th 791 (6th Cir. 2026).  There, the district court exercised supplemental jurisdiction over the Fair and Just Treatment claim, after dismissing all the plaintiff's federal claims.  While the Court of Appeals found

the dismissal of all federal claims to be one factor in its analysis, the focus of

its decision was on its conclusion that the Fair and Just Treatment claim

raised a novel or complex issue of state law.  *Id*. at 795.  The Court of Appeals

explained:

> [T]his case presents exceptional circumstances that
> raise other compelling reasons for declining
> jurisdiction. As discussed, there is no federal
> analogue for Michigan's Fair and Just Treatment
> clause. Nor does Michigan have a statute like § 1983,
> which creates a federal right of action for certain
> violations of the United States Constitution and
> federal laws. So concerns around federal-state
> comity counsel that we abstain from needlessly
> intruding into significant state matters, such as the
> interpretation in the first instance of unique
> provisions of the state's constitution.

*Id*.  The court further held that efficiency considerations did not outweigh the

comity interests.  *Id*. *Williams* counsels against exercising supplemental

jurisdiction over the novel and complex claim for Fair and Just Treatment

under the Michigan Constitution.  Accordingly, Plaintiffs' Michigan

Constitutional claim under the Fair and Just Treatment clause is **DISMISSED**

without prejudice.

    E.    <u>Qualified Immunity – Due Process</u>

Qualified immunity protects government officials from liability for civil

damages "insofar as their conduct does not violate clearly established

20

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established [by] law at the time, such that a reasonable [official] would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  Therefore, in analyzing the issue of qualified immunity, the "first step is to determine if the facts alleged make out a violation of a constitutional right.  The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  The two prongs can be addressed in any order. *Pearson v. Callahan*, 555 U.S. at 236.  Qualified immunity shields an officer's actions if either inquiry is answered in the negative. *Martin*, 712 F.3d at 957.

### 1.    *Personal Involvement of Speidel and Frick*

Defendants argue that Plaintiffs' Amended Complaint does not allege that Speidel or Frick had any role in the enforcement action.  Accordingly,

21

Defendants argue, Plaintiff do not allege any way in which Speidel and Frick have violated a clearly established right.  To prevail on a § 1983 claim, a plaintiff must show personal involvement by the defendant in the constitutional violation.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978); *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995) (plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability).  The theory of respondeat superior is not applicable in the context of § 1983 liability.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).  A claimed constitutional violation must be based on active unconstitutional behavior.  *Id.*; *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'").  Conclusory allegations are insufficient to state a civil rights claim under § 1983.  *See, e.g., Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003).  "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A plaintiff falls short if he pleads facts 'merely consistent with the

22

defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

The Amended Complaint alleges that Speidel and Frick acted to continue to impose restrictions on CTI's ability to submit bids to the Department and continued to do so after Plaintiffs satisfied the probationary period imposed by the Department.  (ECF No. 12, ¶¶ 88, 90, 137).  However these allegations are vague and conclusory and do not allow the court to infer "more than the mere possibility of misconduct."  More specifically, the Amended Complaint fails to offer any specific factual allegations regarding how or when Speidel and Frick acted to impose restrictions on CTI's ability to submit bids after the probationary period was complete.  The Amended Complaint also alleges that Frick engaged in a "coordinated plan to manufacture post hoc documentation and present it as if it existed prior to the issuance of the citations."  (ECF No. 12, ¶ 134).  But the Amended Complaint does not detail how Frick allegedly participated in this plan. Accordingly, Speidel and Frick must be **DISMISSED** from this action for lack of personal involvement.

　　　　2.　　*Williams and Shutt*

23

Defendants argue that Williams and Shutt are immune from any claims arising from their testimony at the underlying administrative proceeding.  As Plaintiffs acknowledge, all witnesses are immune from civil liability based on testimony given in judicial proceedings.  *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (citing *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983).  This is true "no matter how egregious or perjurious that testimony was alleged to have been."  *Id*. (quoting *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)).  This immunity applies even where a conspiracy is alleged.  *Id*.  And it applies to testimony given in administrative proceedings.  *See Butz v. Economou*, 438 U.S. 478, 512–13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages.").

Plaintiffs concede that witnesses enjoy absolute immunity from civil liability, but point out that this immunity does not extend to their non-testimonial conduct.  The Sixth Circuit "has consistently held that nontestimonial, pretrial acts do not benefit from absolute immunity, despite any connection these acts might have to later testimony."  *Gregory v. City of Louisville*, 444 F.3d 725, 739 (6th Cir. 2006); *Alioto v. City of Shively, Ky.*, 835

24

F.2d 1173, 1174 n. 1 (6th Cir. 1987) (recognizing that "the doctrine of witness immunity does not shield from liability alleged conspiracies to falsify nontestimonial evidence[.]").  "Subsequent testimony can not insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence." *Id*. at 738-39.  Plaintiffs argue that their claims do not arise solely from the testimony given by Williams and Shutts.  To the extent that Plaintiffs' due process claims are based on Williams' and Shutts' alleged false testimony, they are barred by witness immunity.

However, to the extent that Plaintiffs' due process claims arise from non-testimonial acts, this doctrine does not bar Plaintiffs' claims.  The question is what actions of Defendants constitute "non-testimonial acts." Plaintiffs do not point to specific allegations in the Amended Complaint in support of this argument.  Instead, they argue that their claims against Shutts and Williams pertain to an unconstitutional scheme involving "document fraud, perjury, and suppression of exculpatory matter."  (ECF No. 16, PageID.305).  The court therefore turns to the Amended Complaint to evaluate the allegations against Shutts and Williams.

First, the allegations as to Shutts.  During the July 9, 2019 conference, after Plaintiff explained that the paint on the windows in the basement was

not lead-based, Shutts claimed that there was an "Addendum" to the risk assessments prepared by the Department's staff and left the conference to look for it. (ECF No. 12, ¶¶ 67-68). The Addendum that Shutts introduced at the informal conference provided that the basement windows were lead-positive. *Id*. at ¶ 71. After reviewing the evidence, the Department staff (including Shutts) advised Plaintiff that the violations were valid and would be enforced. *Id*. at ¶ 72. The Addendum introduced by Shutts at the informal conference provides that Williams inspected the property on February 13, 2019 and submitted the report on February 25, 2019 (which was later discovered to be false). *Id*. at ¶ 75. The report indicates that additional testing was conducted after the LIRA reports were prepared and there were positive lead paint results not originally identified. *Id*. at ¶ 76. According to the Amended Complaint, Shutts falsely implied during her testimony that she believed the Addendum had been timely shared. However, the Amended Complaint alleges that Shutts knew that the first finalized PDF version of the Addendum was made on the day of the informal conference and never disclosed this fact. *Id*. at ¶ 84. Contrary to Shutts' testimony, the metadata on the Word version of the Addendum showed that Williams did not work on the Addendum on February 25, 2019. *Id*. at ¶ 97. Instead, the metadata

26

showed that the draft Word version was actively edited by Williams through March 27, 2019.  *Id*. at ¶¶ 98-99.  Documents produced by the Department showed that Williams never emailed the document to anyone at the Department.  *Id*. at ¶ 100.  The metadata also reveals that the staff wrongfully concealed that the final PDF version of the Addendum was created on July 9, 2019, when Shutts left the conference to look for the Addendum.  *Id*. at ¶ 102.  Thus, the Amended Complaint alleges that Shutts engaged in a coordinated plan to manufacture post hoc documentation and present it as if it existed before the issuance of the citations.  *Id*. at ¶ 134.

Second, the allegations as to Williams.  Williams testified under oath at the hearing that the Addendum was prepared on February 25, 2019 and that he sent it to the Lead Safe Home Program.  (ECF No. 12, ¶ 79).  Williams also testified that he emailed the Addendum to MDHHS staff on February 25, 2019 when he never sent it to anyone within the Department at any time.  *Id*. at ¶ 81.  Contrary to Williams' testimony, the metadata on the Word version of the Addendum showed that Williams did not work on the Addendum on February 25, 2019.  *Id*. at ¶ 97.  Instead, the metadata showed that the draft Word version was actively edited by Williams through March 27, 2019.  *Id*. at ¶¶ 98-99.  The metadata shows that Williams made material

misrepresentations to the ALJ at the hearing.  *Id*. at 101.  The records produced by the Department also revealed that Williams falsely testified that he prepared and emailed the Addendum to MDHHS staff on February 25, 2019, when he did not do so.  *Id*. at ¶ 103.  Well after the false testimony was presented to the courts, the Department admitted that that "final version" of the Addendum was created on the day of the informal conference.  *Id*. at ¶ 105.  Thus, the Amended Complaint alleges that Williams engaged in a coordinated plan to manufacture post hoc documentation and present it as if it existed before the issuance of the citations.  *Id*. at ¶ 134.

Viewed in the light most favorable to Plaintiffs and accepting all well-pled factual allegations as true, the court finds that the Amended Complaint sufficiently alleges that Williams and Shutts participated in the creation of an allegedly fabricated document as well as the presentment of that document at administrative proceedings.  Their actions in creating and presenting the document fall outside the scope of their testimonial immunity.  *See Gregory,* 444 F.3d at 738-39 ("Subsequent testimony can not insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence.").

Defendants argue, however, that Plaintiffs fail to state a due process claim because the state court decisions make clear that the addendum report was not the "sole basis" for the discipline.  That is, the decisions made clear that Plaintiffs had notice that the property's windows were lead hazards from other sources, and had an obligation to repair the windows using lead-safe practices.  The standard is not whether the alleged fabricated evidence was the "sole basis" for the decision, but whether there is a "reasonably likelihood" it would have affected the decision.  *See  Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) (Due process is infringed when the prosecution presents "evidence [that] is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury."). Here, Plaintiffs' allegations go beyond the allegations that the Addendum was fabricated.  Plaintiffs also allege that the refusal to disclose the metadata, which they say showed the fabrication, obstructed their ability to defend themselves, deprived them of a fair hearing before the ALJ and the Circuit Court, and perpetuated the constitutional violations.  (ECF No. 12, ¶ 114). Plaintiffs' fabrication of evidence claim is not just that fabricated evidence was admitted at the state proceedings, but that Defendants' actions prevented them from showing, in those same proceedings, the evidence was

fabricated.  Under these circumstances and viewing the allegations in the Amended Complaint in the light most favorable to Plaintiffs, the court finds that Plaintiffs have sufficiently alleged that the falsified evidence would have affected the decisions reached in the state proceedings.

### 3.      Clearly Established

The Fourteenth Amendment prohibits the government from depriving a person of liberty without due process of law.  *Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) (citing U.S. Const. amend XIV, § 1).  The due-process right is infringed when the prosecution presents "evidence [that] is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury."  *Id.* (quoting *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006)).  "Because the core of the right at issue here is not the deprivation of liberty but the right to a fair trial, 'a stand-alone fabrication-of-evidence claim can survive without regard to probable cause.'"  *Clark*, 131 F.4th at 447 (quoting *Tanner*, 98 F.4th at 733).  "The due process protections afforded by the Michigan Constitution are co-extensive with those afforded under the United States Constitution."  *Wilson v. City of Kalamazoo*, 127 F.Supp.2d 855, 864 (W.D. Mich. 2000).

This due process right regarding fabrication of evidence is clearly established in the context of a criminal prosecution.  However, the parties did not address in their initial briefing whether such a right is clearly established in the context of an administrative proceeding.  Accordingly, the court directed the parties to file supplemental briefs on this issue, which they did so timely.  (ECF Nos. 20, 21).

The Sixth Circuit Court of Appeals recently summarized the applicable principles governing the clearly established prong of the qualified immunity analysis:

> In order to overcome a defendant's qualified immunity defense, "a plaintiff must plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074 (cleaned up). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018). There does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

"The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id*. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014)). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Id*. (quoting *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034). But "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id*. at 590 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)); *see also Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Hart v. Hillsdale County*, 973 F.3d 627, 641 (6th Cir. 2020). Thus, when "no reasonable correctional officer could have concluded" that the challenged action was constitutional, the Supreme Court has held that there does not need to be a case directly on point. *Taylor v. Riojas*, —— U.S. ——, 141 S. Ct. 52, 53, 208 L.Ed.2d 164 (2020). * * *

*Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659-60 (6th Cir. 2021).

The court is reminded, however, that evaluating the clearly established prong of the qualified immunity analysis is most often premature at the motion to dismiss stage and should not generally be done until after the parties have completed discovery.  *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (noting it is "generally inappropriate for a district court to

32

grant a 12(b)(6) motion to dismiss on the basis of qualified immunity"); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (observing that it is generally "difficult for a defendant to claim qualified immunity on the pleadings *before discovery* and before the parties (much less the courts) know what is being balanced against what.") (emphasis in original); *see also Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021) ("[d]ismissing for qualified immunity on [the clearly established prong] is sometimes difficult because the ... inquiry may turn on case-specific details that must be fleshed out in discovery.") (citing *Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir. 2020)).  "The reasoning for our general preference is straightforward: 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Moderwell*, 997 F.3d at 660-61 (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (citation omitted)).

At this stage, the court here cannot determine whether discovery will establish that Defendants' actions were so "egregious" that any "reasonable"

official "should have realized" the alleged fabricated evidence used in the administrative proceedings "offended the Constitution." *Moderwell*, 997 F.3d at 662 (quoting, *Taylor*, 141 S. Ct. at 54). This inquiry requires further factual development beyond the facts in the Amended Complaint. Thus, the court will not decide at this stage of the proceedings whether Plaintiff's due process rights in this context are clearly established.

## IV.    CONCLUSION

For the reasons set forth above, the court **DISMISSES** Plaintiffs' claims in Counts II (42 U.S.C. § 1985), V (Fraud on the Tribunal) with prejudice and **DISMISSES** Plaintiffs' state Fair and Just Treatment clause claim (Count IV) without prejudice. To the extent that Plaintiffs' fraud on the tribunal claim sounds in state law, it is **DISMISSED** without prejudice. Defendants MDHHS, Speidel, and Frick are **DISMISSED** from this lawsuit.

**SO ORDERED**.

Date: March 30, 2026                      s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge